---

LEO HARDY,

     Plaintiff,

CASE NO. 13-CV-769-JPS

v.

CITY OF MILWAUKEE, OFFICER MICHAEL
GASSER, OFFICER KEITH GARLAND, JR. and
OFFICER MICHAEL VALUCH, JR.,

     Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANTS'
## RULE 59(A) MOTION FOR A PARTIAL NEW TRIAL

---

Defendants, City of Milwaukee, Officer Michael Gasser, Officer Keith Garland, Jr. and Officer Michael Valuch, Jr. ("Defendants"), by and through their attorneys, Crivello Carlson, S.C., submit this Brief in Support of their Motion for a Partial New Trial pursuant to Fed. R. Civ. P. 59(a).

### <u>RELIEF REQUESTED</u>

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, the Defendants respectfully request that the Court enter an order for a partial new trial on the following issues:

1)    A new trial on the issue of whether Officer Gasser had reasonable suspicion that the Plaintiff was committing, had committed or was about to commit a crime, so as to support his stop of the Plaintiff;

1

2)     A new trial on the issue of whether Officer Garland had reasonable suspicion that the Plaintiff was committing, had committed or was about to commit a crime, so as to support his stop of the Plaintiff;

3)     A new trial on the issue of whether Officer Gasser, independent of the manner or nature of the search, had reasonable suspicion that he or another was in danger of physical injury, so as to justify his "pat-down" search of the Plaintiff; and

4)     A new trial on the issue of whether the award of punitive damages against Officer Gasser and Officer Garland were warranted on the Plaintiff's claims for the unreasonable stop and Officer Gasser's decision to conduct an initial "pat-down" search of the Plaintiff.

## **BACKGROUND**

This case arises out of events that occurred on March 13, 2012. Plaintiff, Leo Hardy, claimed that his constitutional rights were violated when he was stopped, searched and arrested by Officer Michael Gasser, Officer Keith Garland, Jr. and Officer Michael Valuch, Jr. After a four-day trial, the jury returned the following verdict:

Question No. 1:     At the time of his initial stop of Mr. Hardy, did Officer Gasser have a reasonable suspicion that Mr. Hardy was committing, had committed, or was about to commit a crime?

Answer: No.

Question No. 2:     Setting aside any questions regarding the nature of Officer Gasser's search of Mr. Hardy, did Officer Gasser have reasonable suspicion that he or another was in danger of physical injury, so as to support a frisk or pat-down search of Mr. Hardy?

Answer: No.

Question No. 3:     What amount of money, if any, do you award to fairly and reasonably compensate Mr. Hardy for being stopped and frisked by Officer Gasswer?

2

Answer: $2,500.

Question No. 4:    At the time of his initial stop of Mr. Hardy, did Officer Garland have a reasonable suspicion that Mr. Hardy was committing, had committed, or was about to commit a crime?

Answer: No.

Question No. 5:    What amount of money, if any, do you award to fairly and reasonably compensate Mr. Hardy for being stopped by Officer Garland?

Answer: $2,500.

Question No. 6:    Did Officer Gasser conduct a search of Mr. Hardy in an unreasonable manner?

Answer: No.

Question No. 7 is left unanswered.

Question No. 8 is left unanswered.

Question No. 9 is left unanswered.

Question No. 10 is left unanswered.

Question No. 11 is left unanswered.

Question No. 12:    At the time he arrested Mr. Hardy, did Officer Gasser have probable cause to believe that Mr. Hardy had committed a violation of the law?

Answer: No.

Question No. 13:    At the time he arrested Mr. Hardy, did Officer Garland have probable cause to believe that Mr. Hardy had committed a violation of the law?

Answer: No.

Question No. 14:    What amount of money, if any do you award to fairly and reasonably compensate Mr. Hardy for being arrested without probable cause by Officer Gasser and Officer Garland?

Answer: $1,000.

3

Question No. 15:      Did Officer Valuch conduct a search of Mr. Hardy in an unreasonable manner?

Answer: No.

Question No. 16 is left unanswered.

Question No. 17 is left unanswered.

Question No. 18 is left unanswered.

Question No. 19 is left unanswered.

Question No. 20 is left unanswered.

Question No. 21 is left unanswered.

Question No. 22 is left unanswered.

Question No. 23 is left unanswered.

Question No. 24 is left unanswered.

Question No. 25:      Was the conduct of Officer Gasser malicious or in reckless disregard of Mr. Hardy's rights?

Answer: Yes.

Question No. 26:      What amount of money, if any, do you award against Officer Gasser as punitive damages?

Answer: $250,000.

Question No. 27: Was the conduct of Officer Garland malicious or in reckless disregard of Mr. Hardy's rights?

Answer: Yes.

Question No. 28:      What amount of money, if any, do you award against Officer Garland as punitive damages?

Answer: $250,000.

Question No. 29 is left unanswered.

Question No. 30 is left unanswered.

4

(Trial Tr., vol. 4, 987-989 August 7, 2014).

Following the trial in this matter, Mr. Hardy was successful on two of his claims, but was unsuccessful on the series of claims that he focused most intently on. Through the testimony elicited by the Plaintiff at trial, it was clear that the focus of Mr. Hardy's case was on attempting to establish that the manner in which the officers searched him violated the Fourth Amendment. Mr. Hardy provided graphic testimony and alleged groping, grabbing and physical exposure that he claimed caused him to feel "humiliated, degraded and assaulted." (Trial Tr. vol. 1 109 lines 23, 112 lines 3, 134 lines 8-9 August 4, 2014). However, the jury expressly rejected this testimony and concluded that the manner that the search was conducted was **not** unreasonable.

The jury did rule in favor of Mr. Hardy on two aspects: 1) the officers' stop of Mr. Hardy and the decision to conduct a pat-down search; and 2) false arrest. The testimony and evidence relative to these two successful claims was very different than the testimony offered regarding the manner in which the search was allegedly conducted.

With regard to the decision to make the stop and conduct the initial pat-down search, Officers Gasser and Garland claimed to have had information that Mr. Hardy was on probation and potentially involved in drug dealing. As such, the officers claimed that their initial stop and pat-down was not motivated by evil intent directed towards Mr. Hardy, but rather what they believed to be reasonable suspicion. (Trial Tr. vol. 3, 715 lines 14-17, 716 lines 9-14 August 6, 2014); (Trial Tr. vol. 3, 663 lines 3-21 August 6, 2014). Additionally, the evidence presented at trial indicated that neither Officer Gasser nor Officer Garland knew Mr. Hardy prior to this incident. (Trial Tr. vol. 1, 185 lines 23-25, 186 lines 1-3 August 4, 2014). The absence of evil motive was further supported by the **undisputed**

5

testimony of how quickly the officers responded and the lack of premeditation. According to Officer Garland:

> We immediately exited our vehicle, and we didn't have to think about it. We didn't have a chance to activate our emergency lights or sirens to record. It was just instinct to get out and make sure that we approach him to make sure that he didn't have a weapon.

(Trial Tr. vol. 3, 666 lines 15-19 August 6, 2014).

Mr. Hardy's testimony to counter the officers' testimony was simply that: 1) he did not commit any traffic violations; and 2) he did not smoke or smell like marijuana. (Trial Tr. vol. 1, 105 lines 8-12, 109 lines 6-20 August 4, 2014). Mr. Hardy presented **no** testimony or evidence to suggest, much less prove, the officers' had improper motive or intent or reckless or callous indifference in making the decision to conduct the stop and the initial pat-down search.

With regard to the arrest, as will be argued further below and in the Defendants Rule 59(e) Motion, the evidence introduced at trial does not support a claim for false arrest. During his testimony, Mr. Hardy himself admitted that he fled from the police after the initial stop and pat down search. (Trial Tr. vol. 1, 143 lines 13-21). As such, the jury's verdict was perverse and demonstrates evidence of improper passion, prejudice or bias on the part of the jury.

## **STANDARD OF REVIEW**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial may be granted to any party by the court on all or some issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Courts are instructed to grant a motion for a new trial when the manifest weight of the evidence is against the jury verdict, the damages are excessive or if for some other reason the trial was

6

not fair to the moving party. *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir. 1993). In considering motions made pursuant to Rule 59, courts are instructed to review facts in a light most favorable to the winner on the individual verdict questions. *Schobert v. Illinois Dept. of Transp.*, 304 F.3d 725, 728 (7th Cir. 2002). Finally, a partial new trial may be ordered when, as is the case here, the issues to be re-tried are "distinct and separable" from the remaining issues. *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).

## ARGUMENT

I.     **Defendants Should be Provided a Partial New Trial to Allow a Jury to Evaluate the Officers' Decision to Stop and Pat-Down Mr. Hardy Without Irrelevant and Highly Prejudicial Extraneous Evidence**

A new trial should be ordered if there was an error that caused some prejudice to the rights of the parties. *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993). This error can include the improper admission of evidence. *See Cook v. Hoppin*, 783 F.2d 684, 691 (7th Cir. 1986). In this case, the Defendants respectfully contend that errors of law involving the admission of irrelevant and highly prejudicial evidence occurred at trial. This evidence included: (1) Officer Gasser's observations of a different search conducted by Officer Vagnini; (2) Officer Gasser's John Doe testimony; (3) Officer Gasser's Internal Affairs interview; (4) Officer Gasser's Facebook post; (5) the park meeting; (6) Officer Gasser's assertion of his Fifth Amendment right and the proffer letter; and (7) Officer Thoms' irrelevant re-direct testimony that was impermissibly allowed to go beyond the scope of cross-examination and the Plaintiff's offer of proof.

7

## A. Evidence Regarding Other Searches, the John Doe Investigation and the Internal Affairs Interview, All Related to Other Incidents, Should Not Have been Admitted Based on the Lack of Relevance and the Confusion and Prejudicial Impact

In the Final Pretrial Hearing held on July 29, 2014, this Court emphasized that the Court and all parties were to be "focused on the events that occurred back on…March 13th of 2012" and that "as to the proffered testimony, again, [everyone was to be] limited to what occurred on March 13th, 2012." (Final Pretrial Tr. 5 lines 10-11, 7 lines 21-22). Even during the trial, this Court noted "[W]hat occurred in other cases or other situations has no relevance to the facts of this case." (Trial Tr. vol. 3, 725 lines 14-15, August 6, 2014).

Despite these words of admonition, Plaintiff's counsel repeatedly elicited testimony regarding events unrelated to those that occurred on March 13, 2012. For example, Officer Gasser was questioned multiple times throughout the trial about his observations of a search performed by Officer Vagnini, who was not a party to the case and had nothing to do with the search of Mr. Hardy. Additionally, the jury also improperly heard testimony about the Internal Affairs interview regarding that search and Officer Gasser's John Doe testimony. Examples include the following lines of questioning:

> Q: There came a time on April 4th 2012 when you were seated in a room with deputy District Attorney Lovern and an FBI agent and Detective Carloni and you gave an opinion as to whether or not it was appropriate to go inside a suspect's clothing during an automobile stop, did you not?
>
> MS. LAPPEN: Objection as to relevance, your Honor.
>
> THE COURT: Objection is overruled.
>
> A: I'll just have to take your word—I don't remember the exact date so I'll have to take your word on it. But yes, I do remember having this meeting sometime around that time…

(Trial Tr. vol. 1, 162 lines 23-25, 163 lines 1-8 August 4, 2014).

8

Q: You said there was nothing wrong with the [LLR's] search given the fact that—and it's redacted—blank did not have to expose his buttocks or any private area and that PO Vagnini went into the clothing to retrieve crack cocaine. You said that, did you not?

MS. LAPPEN: Objection, Your Honor, relevance and prejudicial.

THE COURT: It goes to what the witness understood were reasonable and accepted police practices with regard to this sort of police action. The objection's overruled.

(Trial Tr. vol. 1, 165 lines 1-10 August 4, 2014).

Q: You agreed with the district attorney that you would testify against Officer Vagnini and others if he went to trial in search of LLR where, in fact, that Fourth Amendment that you referred to according to your interview was violated, right?

MS. LAPPEN: Objection, Your Honor. Relevance.

THE COURT: Objection's overruled.

A: You asked if I agreed to testify?

Q: Yes.

A: I was subpoenaed to testify, ma'am.

Q: That would be with respect to the John Does hearings.

A: Yes, I was subpoenaed for the John Doe hearings.

(Trial Tr. vol. 3, 758 lines 1-10 August 6, 2014).

To be relevant, Rule 401 of the Federal Rules of Evidence provides that evidence must have a tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Officer Gasser's report or testimony about what he saw another officer do in an unrelated arrest situation that occurred years earlier is not relevant to the events of March 13, 2012. Each search is different and whether a search is reasonable or unconstitutional "is a fact-

9

specific inquiry that depends upon the way each plaintiff was searched and the security risks presented by each plaintiff." *Klein v. DuPage County*, 119 F.R.D. 29, 30 (N.D. Ill. 1988).

The facts surrounding the LLR search are distinct from those of Mr. Hardy's search. In addition, Officer Gasser did not even perform the LLR search, but rather was a mere observer. Permitting the jury to hear testimony regarding the LLR search and the subsequent investigation into that search placed an impermissible focus on LLR's search rather than the search of Mr. Hardy on March 13, 2012. Allowing this persistent line of questioning, especially considering the prejudicial nature of the questioning, was improper because it likely impassioned the jury (as evident by the punitive damages award) and also confused the jury by focusing on a search that was not in any way connected to Mr. Hardy's March 13, 2012 search.

> **B.** **Evidence Regarding Officer Gasser's Facebook Post and the Meeting in the Park Should Not have been Admitted based on Relevance, Confusion and the Prejudicial Effect of the Evidence**

Evidence was also admitted regarding a Facebook posting by Officer Gasser and a meeting that was held at a park after the subpoenas were issued for the John Doe hearing. Examples include the following lines of questioning:

> Q: And about four days after you were told not to talk about the matters that were contained in that subpoena and that ultimately you received the proffer letter to talk about, you went to—you received a text and you went to a park with a lot of the officers who are also subject to this investigation, correct?
>
> MS. LAPPEN: Objection, Your Honor. Relevance.
>
> THE COURT: Objection's overruled.
>
> A: I remember going to a park and hanging out with some friends. I don't recall how I was notified, by who.

(Trial Tr. vol. 1, 198 lines 23-25, 199 lines 1-8 August 4, 2014).

10

Q: Okay. There came a time where after you had received that order not to talk about the matters under investigation at the John Doe, at the same time you received the subpoena where you got the order that you posted something on your Facebook page which would be in violation of talking about those correct?

MS. LAPPEN: Objection, Your Honor. Relevance.

THE COURT: Objection is overruled.

A: That is incorrect also…

                    *                    *                    *

Q: And you wrote, did you not, "Like Mucha said, everyone still needs to go kick ass and keep up the great work. I know how much I appreciate all the support from everyone." And with that you're referring to because you had been placed on desk duty, correct?

A: Yes, I had been placed on administrative duty for a while at that point.

Q: And "how tough it is not to be out there working with you guys." You wrote that right?

A: Correct.

Q: And you also wrote "backing you up and taking people to jail," right?

A: Correct. I wrote that also.

Q: That is "how great it is working with you guys, backing you up and taking people to jail. You then wrote: "But I have all the confidence in the world as soon as this is cleared we'll get our badge and gun back and go back to 5 and my first day back I will not hesitate to go right back to doing exactly what I was doing before. Nothing will change in how I do my job." That's what you wrote after eight officers had been suspended in a strip-search investigation, correct?

MS. LAPPEN:        Objection, Your Honor. Relevance. It's prejudicial. Argumentative.

THE COURT:         The objections on all grounds are overruled and the witness I believe has confirmed that he wrote the words that Ms. Shellow has placed on the record. If not, he can so indicate.

11

(Trial Tr. vol. 1, 208 lines 17-25, 209 lines 15-25, 210 lines 1-16 August 4, 2014)

The Facebook posting and meeting in the park have nothing to do with the events of March 13, 2012. The John Doe investigation regarding the strip search investigations did not contemplate any allegations made by Mr. Hardy. Thus, whether Officer Gasser posted something about the unrelated strip search investigations or attended a meeting in the park after being subpoenaed to testify regarding those unrelated investigations, has no relevance to whether Mr. Hardy's stop, search and subsequent arrest were constitutional.

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Not only was the admitted evidence irrelevant to Mr. Hardy's claims, it caused confusion and bias within the jury and unfair prejudice to the Defendants.

This confusion, bias and prejudice is reflected in the punitive damages awarded by the jury. While the jury found that the manner that Mr. Hardy's search was conducted was not unreasonable, it still awarded $500,000 in punitive damages. The jury's decision in awarding the punitive damages was tainted by the extraneous and irrelevant evidence regarding the other strip search investigations and the events surrounding the aftermath of those investigations. While the Defendants argue for an alteration or amendment of the judgment for punitive damages in their Rule 59(e) Motion, the fact that the jury awarded punitive damages while nonetheless finding that the search was reasonable is evidence of the confusing and prejudicial impact that the testimony had at trial.

12

**C.** **Evidence Regarding Officer Gasser's Invocation of his Fifth Amendment, his Retention of an Attorney and the Proffer Letter in the Context of the John Doe Investigation Should Not have been Admitted based on Relevance and the Prejudicial Effect of the Evidence**

During trial, Plaintiff's counsel also questioned Officer Gasser about the invocation of his Fifth Amendment rights and a proffer letter negotiated by his attorney in the context of his testimony regarding the unrelated LLR search:

Q:    And on April 4th, 2012, you underwent a debriefing regarding the search of LLR by Officer Vagnini, correct?

　　　　　　　*　　　　　*　　　　　*

Q:    You received a letter. You received—your lawyer negotiated on your behalf a proffer letter, correct?

A:    Yes, ma'am.

Q:    And either contemporaneously or shortly thereafter or before, after that agreement had been in place, you sat down and you answered the questions that were put to you that you had previously asserted your Fifth Amendment privilege correct?

A:    I remember the letters and I remember the day that I got the letters. I remember being interviewed about an incident. Whether or not I had asserted my Fifth Amendment right before that, I don't recall.

(Trial Tr. vol 3, 760 lines 19-25, 761 lines 1-8 August 6, 2014)

The argument and testimony regarding the Officer Gasser's invocation of Fifth Amendment rights, his proffer letter, as well as his retention of an attorney, were irrelevant and extremely prejudicial to Defendants. There has been no question that Defendants were willing to testify and cooperate in Mr. Hardy's case. A trier of fact cannot consider a person's invocation of the Fifth Amendment in a prior separate hearing when that person is and has been willing to testify in the present case and has responded fully to interrogatories. *See Avirgan v. Hull*, 932 F.2d 1572, 1579-90 (11th Cir. 1991).

13

Again, the LLR search and Officer Gasser's observation of the search conducted by a non-defendant officer are not relevant to the events of March 13, 2012. Allowing evidence of Officer Gasser's role and testimony in the context of the unrelated search confused the jury and prejudiced the officers.

**D.** **Testimony from Officer Thoms that Went Beyond the Scope of Cross-Examination and the Plaintiff's Required Offer of Proof Should Not have been Admitted based on Relevance and the Prejudicial Effect of the Evidence**

Prior to trial, the Court ordered the Plaintiff to submit a detailed offer of proof relative to the testimony that the Plaintiff sought to elicit from Officer Thoms. (Docket No. 181). In his offer of proof, the Plaintiff indicated that he may call Officer Thoms to testify regarding the meeting in the park, which has been addressed previously. (Docket No. 192). However, during his redirect examination, Plaintiff's counsel questioned far beyond the scope of cross-examination and the offer of proof and elicited testimony from Officer Thoms regarding an entirely irrelevant situation:

Q:      And there were even times when you thought your life was in danger.

        MS. LAPPEN:      Objection, Your Honor. This is outside the scope of cross-examination and irrelevant.

        THE COURT:      Well, it's germane. The Court overrules the objection. You may answer the question.

A:      There was an incident where I felt it necessary to inform the supervisor of the situation. There wasn't a direct threat, verbal or otherwise, but it was more symbolic in nature.

Q:      And what was that?

A:      When I got to work at the Neighborhood Task Force, in my mailbox there was a rifle round, a live rifle round that is not—not familiar with the City of Milwaukee's rifles. Just kind of stood out of place.

(Trial Tr. vol. 2, 520 lines 16-25, 521 lines 1-7 August 5, 2014).

14

This questioning was well beyond the scope of the cross-examination and it went well beyond the scope of the offer of proof presented by the Plaintiff. Moreover, as explained above, the search conducted of LLR by Officer Vagnini, the investigation of that search and any response to that investigation were not relevant to the events of March 13, 2012. Thus, testimony regarding the alleged reaction to another officer's testimony in that unrelated case did not have a tendency to make the existence of any fact more or less probable. *See* Fed. R. Evid. 401.

In the case at bar, the prejudicial emphasis of irrelevant evidence regarding the other investigation had the precise impact that the Plaintiff desired: a punitive damages award that greatly exceeded support from the evidence.

> **E.     The Foregoing Evidentiary Rulings Amounted to Cumulative Error that Substantially Influenced the Jury's Verdict**

Where a trial court has made evidentiary errors, a new trial is warranted "when the cumulative effect of the errors is to substantially influence the jury's verdict." *Williams v. Kansas City, Mo.*, 223 F.3d 749, 755 (8th Cir. 2000). As such, the evidentiary issues raised above should not only be considered independently, but they should also be considered in their cumulative impact.

Specifically, not only was the irrelevant testimony cited above prejudicial to the Defendants, it also opened the door to further arguments made by the Plaintiff that undoubtedly influenced the jury's verdict. For example, during closing argument, Plaintiff's counsel re-visited Officer Gasser's invocation of his Fifth Amendment right and confused the jury regarding the context:

> Silence speaks volumes. Back in the spring of 2012 every one of the defendants and four or five police officers were asked by a detective, "Will you tell us what happened between you and Leo Hardy on March

13, 2012." Four of the five of them said, "No. I am a sworn police officer. I am wearing a badge. I've sworn an oath to uphold the law, but I am not going to tell you what happened between me and Leo Hardy."

They were told, "You're not the target of the criminal investigation. We just want to know what you saw and what you observed." And they said, "We're not going to talk."

(Trial Tr. vol. 4, 881 lines 12-21 August 7, 2014).

In addition to re-visiting irrelevant and highly prejudicial testimony, the foregoing argument **<u>incorrectly</u>** insinuated that a criminal investigation of police officers was somehow connected to Mr. Hardy's search. Once testimony was elicited regarding the John Doe investigation and the proffer letter associated with a completely unrelated search and arrest scenario, it is easy to see how the jury became confused. The same is true of the irrelevant testimony of Officer Thoms and the testimony related to Officer Gasser's Facebook posting. *See* (Trial Tr. vol. 4, 883 lines 2-8, 898 lines 14-21 August 7, 2014).

The irrelevant and highly prejudicial testimony that the Plaintiff elicited throughout the trial and the re-visiting of that testimony during closing argument had a repeated and cumulative effect that influenced the jury's verdict. This caused the jury to render an inconsistent verdict with regard to the false arrest claim and a punitive damages award that was not supported in fact or law.

## II. The Defendants Should be Provided a Partial New Trial to Determine if Punitive Damages are Warranted for the Limited Claims that the Jury Ruled Against the Officers

The jury's finding of an unreasonable stop does not warrant an award of punitive damages, nor does the evidence presented at trial justify such an award. The standard for awarding punitive damages is high and must be granted only if the defendant's culpability is so reprehensible to warrant the imposition of further sanctions to achieve punishment or

16

deterrence. *State Farm Mutual Automobile, Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). In the context of a § 1983 case, a plaintiff must prove that the defendant was "motivated by evil motive or intent or [showed] reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). A punitive damages award "may not constitute merely a windfall to the prevailing party." *Allahar v. Zahora*, 59 F.3d 693, 696 (7th Cir. 1995).

In this case, the jury's punitive damages award does not fit the evidence presented by Plaintiff at trial and therefore constitutes nothing but a mere windfall to Plaintiff. The outrageous conduct to which Plaintiff testified at trial surrounded the manner in which he alleged that he was searched by Officers Gasser and Valuch. Mr. Hardy testified that the alleged groping, grabbing and physical exposure caused him to feel "humiliated, degraded and assaulted." (Trial Tr. vol. 1 109 lines 23, 112 lines 3, 134 lines 8-9 August 4, 2014). It is easy to see how this alleged conduct could justify an award of punitive damages. However, **the jury did not believe Mr. Hardy's testimony regarding the search** and instead found that the manner in which Plaintiff was searched was not unreasonable as a matter of law. (Trial Tr. vol. 4, 988 lines 2-4, 23-25).

Instead, on the question of the existence of reasonable suspicion for the stop and pat-down, the jury ruled in favor of Mr. Hardy and awarded him $2,500 in compensatory damages against Officer Gasser and another $2,500 against Officer Garland. (Trial Tr. vol. 4, 987 lines 14-17, 23-25, 988 lines 1, 18-22 August 7, 2014). The jury then also found in favor of Mr. Hardy on his claim for false arrest[1] and awarded a mere $1,000 in damages.

---

[1] The jury's finding in favor of Mr. Hardy constitutes a manifest error of law based on the fact that Mr. Hardy admitted that he fled the officers who had stopped him. Regardless of the constitutionality of the stop, Mr. Hardy's admission that he fled the officers provided probable cause for an arrest as a matter of

Case 2:13-cv-00769-JPS   Filed 09/18/14   Page 17 of 21   Document 227

Then, despite the understated evidence relative to the stop and pat-down search, the jury went on to award a total of $500,000 in punitive damages against Officer Gasser and Officer Garland. (Trial Tr. vol. 4, 989 lines 13-15, 19-21 August 7, 2014).

Mr. Hardy did not present sufficient evidence to prove evil motive or intent or reckless or callous indifference on the part of Officers Gasser and Garland in the initial stop and the decision to conduct a pat-down search of the Plaintiff. The testimony and evidence reflects that Officers Gasser and Garland had information that Plaintiff was on probation and potentially involved in drug dealing. As such, the initial stop and pat-down was not motivated by evil intent, but rather reasonable suspicion. (Trial Tr. vol. 3, 715 lines 14-17, 716 lines 9-14 August 6, 2014); (Trial Tr. vol. 3, 663 lines 3-21 August 6, 2014). Moreover, the evidence presented at trial indicated that neither Officer Gasser nor Officer Garland knew Mr. Hardy prior to this incident. (Trial Tr. vol. 1, 185 lines 23-25, 186 lines 1-3 August 4, 2014). The absence of evil motive was further supported by the **<u>undisputed</u>** testimony of how quickly the officers responded and the lack of pre-meditation. According to Officer Garland:

> We immediately exited our vehicle, and we didn't have to think about it. We didn't have a chance to activate our emergency lights or sirens to record. It was just instinct to get out and make sure that we approach him to make sure that he didn't have a weapon.

(Trial Tr. vol. 3, 666 lines 15-19 August 6, 2014).

The foregoing testimony is consistent with the Supreme Court's recognition that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving…" *Graham v. Connor*, 490 U.S. 386, 397 (1989).

---

law. This argument is further addressed in the Defendants' Rule 59(e) Motion to Alter or Amend the Judgment.

The jury ultimately concluded that the officers did not have reasonable suspicion for the stop. However, even viewing the evidence regarding the initial stop and pat-down search in a light most favorable to Mr. Hardy, there was no legal basis for the imposition of punitive damages.

Moreover, with regard to the arrest, the jury's finding of liability was also inappropriate and demonstrates the jury's confusion and/or bias. The evidence and testimony revealed that Plaintiff's arrest was based on the fact that Plaintiff ran from Officers Gasser and Garland at the initial stop. (Trial Tr. vol. 3, 738 lines 8-12 August 6, 2014). Plaintiff testified at trial:

Q:     And at that point you fled from the police correct?

A:     Correct.

Q:     And you indicated that you fled pretty much straight forward across the hilly mound area that's in the center of Mayflower Court, correct?

A:     Correct.

Q:     All right. And you said you wanted to just get away from him and separate yourself from him, correct?

A:     Correct.

(Trial Tr. vol. I, 143 lines 13-21 August 4, 2014).

If a person flees officers, even from an unlawful stop, such flight from the officers provides probable cause to arrest that person. *See United States v. Sledge*, 460 F.3d 963, 966-67 (8th Cir. 2006).

III.  **The Jury's Verdict on the False Arrest Claim and the Award of Punitive Damages Demonstrates the Jury's Overall Confusion and/or Impermissible Bias that Warrants a Partial New Trial on the Stop, the Decision to Search and Punitive Damages**

Due process guarantees within the Constitution are meant to ensure that jury verdicts are not the product of jury passion, prejudice or bias.  *Pacific Mut. Life Ins. v. Haslip*, 499 U.S. 1, 41 (1991) (Kennedy, J., concurring in judgment) ("A verdict returned by a biased or prejudiced jury no doubt violates due process").

In the case at bar, there are several explanations for jury bias.  In addition to the testimony that the jury heard that was unrelated to Mr. Hardy's search, the public and potential jurors have been inundated with media reports regarding incidents involving law enforcement both in Milwaukee and nationally.  Locally, in the months, weeks and days leading up to the trial, several media outlets reported negatively on the Milwaukee Police Department both with regard to the "strip search cases" and other entirely unrelated incidents.  While the Court's effort to expose potential bias and prejudice during voir dire is certainly significant, it does not guarantee the constitutionally required unbiased, dispassionate and unprejudiced jury that a defendant is entitled to.  In this case, the jury's inconsistent findings warrant a partial new trial.

Through the Defendants' Rule 59(e) Motion, the Defendants request that the Court grant a remittitur of the punitive damages award.  However, the award of punitive damages in this case, coupled with the jury's finding of reasonableness in the manner that the search was conducted, demonstrates that the jury was inflamed by impermissible passion, prejudice or bias.  In such a scenario, a new trial on damages may be appropriate in lieu of a remittitur. *Durant v. Surety Homes Corp.*, 582 F.2d 1081, 1087-1088 n.7 (7th Cir. 1978).

Further, the jury's verdict finding that probable cause for the arrest of Mr. Hardy did not exist, despite Mr. Hardy's own testimony admitting that he fled the officers and the jury's finding the manner the search was conducted was reasonable, also demonstrates the jury's impermissible passion, prejudice or bias. The verdict finding a false arrest, despite Mr. Hardy's own testimony admitting to the existence of probable cause for the arrest is basis for the grant of a partial new trial.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Court grant a partial new trial to allow a jury to address Mr. Hardy's claims for an unreasonable stop, the decision to conduct a pat-down search, the claim for false arrest and punitive damages, without the admission of irrelevant and highly prejudicial evidence.

Dated this 18th day of September, 2014.

By: _/s/ Samuel C. Hall, Jr._____
        SAMUEL C. HALL, JR.
        State Bar No. 1045476

        Attorneys for Defendants, City of
        Milwaukee, Officer Michael Gasser, Officer
        Keith Garland, Jr. and Officer Michael
        Valuch, Jr.

        CRIVELLO CARLSON, S.C.
        710 North Plankinton Avenue, Suite 500
        Milwaukee, Wisconsin 53203
        Phone – (414) 271-7722
        Fax – (414) 271-4438
        shall@crivellocarlson.com