IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN, MILWAUKEE DIVISION


LEO HARDY,                                    )
                                              )
          Plaintiff,                          )        2:13-cv-00769-JPS
                                              )
     vs.                                      )
                                              )        Judge J.P. Stadtmueller
CITY OF MILWAUKEE, *et. al.*,                 )
                                              )
          Defendants.                         )        JURY TRIAL DEMANDED



**PLAINTIFF'S REPLY IN SUPPORT OF HIS**
**PETITION FOR ATTORNEYS' FEES AND COSTS**




                                   Arthur Loevy
                                   Jon Loevy
                                   Russell Ainsworth
                                   Heather Lewis Donnell
                                   Theresa Kleinhaus
                                   LOEVY & LOEVY
                                   312 North May, Suite 100
                                   Chicago, Illinois 60607

                                   Robin Shellow
                                   THE SHELLOW GROUP
                                   324 West Vine Street
                                   Milwaukee, Wisconsin 53212

## Introduction

For all of the arguments in Defendants' Response, nowhere do they dispute the fundamental point that most of the attorneys' fees now at issue could have been avoided had the City accepted Plaintiff's extremely reasonable settlement demand. Plaintiff not only offered to accept $10,000 in compensation, but in order to ensure that attorneys' fees were not an obstacle, his counsel offered to waive more than 95% of their attorneys' fees (all but $15,000).

Apparently believing it had the upper hand, the City refused to negotiate. The City's refusal to offer a single dime forced time-consuming summary judgment briefing and a trial, billable hours for which Plaintiff's counsel now seeks compensation. Plaintiff is not suggesting that there is any rule that Defendants must resolve cases. But having made litigation decisions that caused substantial attorneys' fees to accrue, Defendants are on thin ground arguing that Plaintiff should not be paid for that time. Under well-settled law, the lodestar is presumptively appropriate compensation where, as here, Plaintiff prevails financially on at least some of his claims and, more importantly, accomplishes his litigation goals.

Here, the $506,000 verdict is a huge and undeniable win. This is not a "nominal" verdict, particularly in light of the relatively modest injuries Mr. Hardy suffered. Not only were Mr. Hardy's constitutional right vindicated and meaningfully compensated, but the entire Milwaukee community benefited from the message sent by the $500,000 punitive damage, one almost certain to help deter other Milwaukee police officers from engaging in the same sort of misconduct in the future. Even if ultimately remitted by the Court to the maximum amount the Court deems appropriate, the verdict is still fairly characterized as a tremendous success. And nothing about the law surrounding Section 1988 justifies the type of downward departure advocated by the Defendants.

1

## I.     There Is No Justification For Any Blanket Reduction In The Lodestar

Defendants begin their Response by contending that no attorneys' fees are appropriate at all, or else some very small percentage.  There is no merit to these arguments.

### A.     The Full Lodestar Is The Presumptively Appropriate Result

Congress passed Section 1988 to encourage skilled counsel to take up civil rights cases, which tend to be time-consuming, difficult to win, and lacking any guarantee of payment.  As such, the law provides that lawyers who win these cases are entitled to compensation valued by their lodestar, *i.e.,* all of the hours reasonably expended on the litigation times their reasonable hourly rates.  *County of Riverside v. Rivera,* 477 U.S. 561, 574-81 (1986) ("In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case") (emphasis supplied).  Indeed, under well-settled Seventh Circuit and Supreme Court law, not only is "no compensation" a wholly inappropriate result, but, quite the opposite, the *full lodestar* is the *presumptive* fee.  *See, e.g., Perdue v. Kenny A.,* 559 U.S. 542, 552 (2010) (noting a "strong presumption" of reasonableness that attaches to a full lodestar calculation of attorney's fees, and holding that fees may be adjusted downward only in "those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee"); *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011) ("The lodestar approach forms the 'centerpiece' of attorneys' fee determinations, and it applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement."); *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 872 (7th Cir. 1995) ("[Courts employ a] strong presumption that the lodestar figure -- the product of reasonable hours times a reasonable rate -- represents a reasonable fee," a presumption that is "wholly consistent" with the purposes of Section 1988).

2

**B.    There Was No "Lack of Success" Here Of The Sort That Could Justify An Additional Reduction In The Lodestar**

Ignoring the $500,000 punitive damage award, Defendants' Response attempts to characterize this verdict as a "nominal" or "trifling" victory.  Resp. at 3.  To the contrary, there was nothing nominal, technical or *de minimis* about this jury's award.  Plaintiff prevailed on his claims that Defendants Garland and Gasser violated his Fourth Amendment rights when they stopped and frisked him without legal justification and then falsely arrested him, which are significant constitutional violations even if these violations did not result in significant compensable damages.  And as stated, this case furthered a significant public goal and sent a clear message to the community that the it will not tolerate police officers who violate citizens' rights as Defendants Gasser and Garland were found to have done here.  The underlying injuries at issue may not have been pecuniary or overwhelming, but Mr. Hardy was fully compensated for what he suffered, and there is no justification to cut attorneys' fees on that basis.

And all of that ignores the punitive damages verdict, an award that cannot and should not just drop out of the analysis.  Even if the Court does decide to remit it to the maximum allowable under the law, that award alone takes this case outside the *Farrar* realm of "nominal" damages.[1]

For starters, *Farrar* itself involved a case in which the plaintiff sought $17 million in damages, yet the jury awarded only a nominal damage of $1.  *Farrar,* 506 U.S. at 116.  Even so, the Supreme Court's holding in *Farrar* is that a nominal damage award does not automatically deprive a Section 1983 plaintiff of his prevailing party status.  Aponte v. City of Chicago, 728 F.3d 724, 726 (7th Cir. 2013) ("*Farrar v. Hobby* holds that plaintiffs who bring § 1983 claims

---

[1]  The Seventh Circuit has adopted the three-part test in Justice O'Connor's concurrence in *Farrar v. Hobby,* 506 U.S. 103 (1992) to determine attorneys' fee awards in cases where the court has determined that the prevailing party obtained only a "technical or de minimis" victory. *Aponte v. City of Chicago,* 728 F.3d 724, 727 (7th Cir. 2013) (quoting *Farrar,* 506 U.S. at 120-22 (O'Connor, J., concurring)).

3

and win only "nominal" damages are still "prevailing parties" under § 1988 and thus eligible to receive reasonable attorney's fees.").

In *Aponte,* the plaintiff brought a § 1983 police misconduct case alleging to eight police officers violating his Fourth Amendment rights when they searched his home pursuant to a warrant and in doing so destroyed his property. 728 F.3d at 725-26. After a three day trial, "Aponte's counsel urged the jury to award him $25,000 in compensatory damages ($10,000 for property damages and $15,000 for emotional damages) and $100,000 in punitive damages ($25,000 from each individual defendant)." *Id.* at 726. Instead, the jury awarded Mr. Aponte $100 in compensatory damages against one of the eight defendants. *Id.* The Seventh Circuit affirmed the court's application of the *Farrar* test in that case because the verdict was de minimis in light of overall result Plaintiff obtained. *Id.* at 729-30.

This case is not *Farrar* and it is not *Aponte*. Here, Plaintiff's counsel suggested a range for compensatory damages from $3,000 to $8,000 for each claim. *See* Trial Tr. vol. 4 (8/7/14) at 897. The jury awarded slightly less than the bottom of (but within) the range that counsel suggested for the unlawful stop and frisk claims against Defendants Gasser and Garland: $2,500 each and $1,000 for his false arrest claim. For punitive damages, Plaintiff's counsel did not even suggest a range for the jury's award, but only advised that they should "send a message." The jury then awarded $250,000 against each Defendant for a total of $500,000. This verdict found the two main Defendants committed Fourth Amendment violations and awarded meaningful compensation and significant punitive damages. The jury's verdict cannot be fairly characterized as de minimis or nominal to warrant application of the *Farrar* standard here. *See also Olian v. Board of Educ.,* City of Chicago, 2010 WL 1197100, *2 (N.D. Ill. March 22, 2010) ("In cases that involve more than a nominal award, however, the Seventh Circuit has explicitly 'rejected the

notion that the fee award should be reduced because the damages were smaller than a plaintiff originally sought'"), citing *Enoch v. Tienor,* 570 F.3d 821, 823 (7th Cir. 2009).

The other cases on which Defendants rely are similarly easily distinguishable. In *Bayer v. Marinette County,* 06-365, 2008 WL 4065934, *4 (E.D. Wis. Aug. 27, 2008), the court applied the *Farrar* standard because the jury awarded only nominal damages of $1 to plaintiff because there was no proof of compensable injury in case brought by a strip club owner for the manner in which his club was searched as part of drug and prostitution investigation. *Id.* Plaintiff had sought at the very minimum $20,000 in compensatory and punitive damages, yet ended up with $1. *Id.* And the other cases on which Defendants rely did not even apply the *Farrar* standard because the plaintiffs obtained compensable, albeit modest damages awards. *See, e.g.,Sottoriva v. Claps,* 331 Fed. Appx. 384, 385 (lodestar was reduced because plaintiff only obtained right to a hearing before payments could be withheld from his paycheck when he had sought injunctive relief and damages for alleged tax losses); *Cole v. Wodziak,* 169 F.3d. 486 (7th Cir. 2013) (affirming reduction of lodestar for limited success on claims that the court calculated at three times the total damages award). As a result, these courts reduced the lodestar based on the specific facts of those cases and the limited success those plaintiffs obtained, but the courts did not apply the *Farrar* standard.[2]

More tellingly, Defendants mischaracterize Plaintiff's victory as "one that served his individual interests, rather than advancing some larger public purpose." Def. Resp. at 4. This is

---

[2]  One of the key factors the *Cole* court weighed in reducing the fee award in that case was the fact that the plaintiffs rejected a settlement offer of $5,000 when the jury ultimately awarded them only $4,500. *Id.* at 489 (plaintiff could have "saved everyone a good deal of time and money, and opened a slot for another trial on the district court's calendar, by showing equal candor earlier" about willingness to accept $2,000 plus an apology to settle the case). This case is the opposite: Defendants refused to settle, and Plaintiff went on to recover more than a half a million dollars.

Case 2:13-cv-00769-JPS   Filed 10/03/14   Page 6 of 23   Document 233

completely inaccurate. Far more so than most verdicts, this civil rights victory advanced important public interests by serving a rare and useful function in our society: holding law enforcement accountable when officers cross the line and violate the Constitution. Other than civil jury verdicts, there are few, if any, other effective mechanisms to ensure scrupulous observations of Constitutional rights. When litigants like Mr. Hardy, represented by attorneys like Plaintiff's counsel, invest the substantial time and effort (all at great risk of recovering nothing) that it takes to win cases like this one, the net result forces the entire law enforcement community to recommit to respecting people's rights.

Favorable civil rights jury verdicts are thus an important aspect of deterrence in our system of checks and balances, and one the courts have specifically recognized as serving a salutary public purpose. *City of Riverside,* 477 U.S. at 574-75 ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."). Accordingly, under Section 1988, winning civil rights lawyers are to be paid "for all the time reasonably expended on the matter." *Id.* "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Id.* at 575. *See also Robinson v. Harvey,* 489 F.3d 864, 872 (7th Cir. 2007) (quoted at greater length in Plaintiff's Petition) (jury award of $250,000 was deemed more than sufficient to support the full lodestar, particularly because "the vindication of [Plaintiff's] constitutional rights cannot be valued solely in monetary terms").

**C.     The Fact That Mr. Hardy Did Not Prevail On Every Claim Does Not Merit A Downward Departure**

Lacking any proper reliance on the *Farrar* standard, Defendants' other lodestar-related argument is that the fee award should be reduced to account for the fact that Plaintiff did not prevail on every single claim, namely, his strip search claims. Def. Resp. at 21-23. Specifically, Defendants suggest that the lodestar should be reduced by 62.3%, which they calculated to "reflect the number of claims on which Plaintiff was not successful." *Id.* at 22.

Defendants' attempt to reduce the lodestar by "claims counting" has no support in the law. *See, e.g., Hensley,* 461 U.S. at 435 n. 11. As the Supreme Court explained in *Hensley:* "We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Id.* (internal citation and quotation marks omitted). *See also Lenard v. Argento,* 808 F.2d 1242, 1245–46 (7th Cir. 1987) ("For tactical reasons and out of caution lawyers often try to state their client's claim in a number of different ways, some of which may fall by the wayside as the litigation proceeds. [If the lawyer]. . . presents a congeries of theories each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for.").

Instead, the appropriate legal test that the Court must apply is not the amount of the damages recovered or even claims won, but rather the result obtained and whether the hours spent were reasonable:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the

7

litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley,* 461 U.S. at 435 (citation omitted); *see also Montanez,* 755 F.3d at 553 ("Ultimately the guiding inquiry is whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.") (quoting *Hensley,* 461 U.S. at 434).

Applying *Hensley*, Plaintiff should be awarded the full lodestar without any reduction even though Plaintiff did not prevail on his strip search claims. This case was litigated from start to finish as a common set of facts regarding Plaintiff's encounter with the Defendants on March 13, 2012. All of the discovery in this case was related to the entire encounter, not just the strip search claims and summary judgment only involved the stop and frisk and false arrest claims. This is exactly the sort of case that *Hensley* contemplates in terms of not easily parsing out the time spent on the successful and unsuccessful claims because they all arose and were litigated out of a common set of facts:

In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley,* 461 U.S. at 435; *see also Dunning,* 62 F.3d at 873 ("Because of the interrelated nature of the two claims, her attorneys had to prepare for the 'litigation as a whole'") (quoting *City of Riverside,* 477 U.S. at 569); *Gautreaux v. Chicago Housing Auth.,* 491 F.3d 649, 661-62 (7th Cir. 2007) ("So long as the plaintiffs' lawyers' activities are factually related to issues on which

8

the plaintiffs have achieved [success] and the work was reasonably calculated to result in relief, the district court may grant attorneys' fees").

It is equally well-settled that Plaintiff's counsel should not be "penalized" for trying to win multiple claims. *See Jaffee v. Redmond,* 142 F.3d 409, 417 (7th Cir. 1998) ("when plaintiffs attain success, courts should not decline to award fees to the plaintiffs' attorneys solely because certain zealous advocacy that was appropriately provided their clients did not contribute directly to that success. This approach would be at odds with the norms of professional responsibility."). Indeed, "[i]f arguments that do not contribute to a plaintiff's ultimate success were not eligible for compensation for that reason alone, then attorneys might be discouraged from raising novel but reasonable arguments in support of their clients' claims and a disincentive for strong advocacy could result." *Partington v. Broyhill Furniture Indus.,* 999 F.2d 269, 273-74 (7th Cir. 1993) ("A lawyer who figures out the likeliest outcome in his favor, and aims only for that, is likely to fall short. The good lawyer aims higher, and is not improvident to do so").

For these reasons, Defendants' argument that the lodestar should be reduced by 62.3% must be rejected. Such "claims counting" has no support in the law. *Sottoriva,* 441 Fed. Appx. at 385, 2011 WL 4703075, at *1 ("We were especially concerned because the 67% reduction might have been based on the fact that Sottoriva was unsuccessful on two of his three claims, a form of "claim counting" disapproved by the Supreme Court.") (citing *Hensley,* 461 U.S. at 435 n. 11); *cf. Cole,* 169 F.3d at 487 ("A judge may not mechanically reduce the lodestar on account of partial success. So, if a plaintiff asks for $50,000 and gets $45,000, a judge may not lop off 10% of the lodestar and award the rest as the reasonable fee."); *Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997) (disapproving of a "meat-axe approach" to reducing lodestar fees, and

9

stating that "[p]ercentage reductions of the kind the district court used are not a good way to make adjustments for partial success").[3]

Nor is there any proportionality requirement in Section 1988 fee awards. Leaving aside that the verdict actually exceeds the fee award sought, the law does not require any proportionality requirement. Were it otherwise, a case like this could never be brought, at least not with the vigor it takes to win. *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863 (7th Cir. 1995) ("In determining the reasonableness of attorney's fees, this court has rejected the notion that the fees must be calculated proportionally to damages. . . As we understand §1988's provision for allowing a 'reasonable attorney's fee,' it contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less"); *Sheehan v. Donlen Corp.,* 173 F.3d 1039, 1047 (7th Cir. 1999) ("This court has repeatedly rejected the notion that the fees must be calculated proportionally to damages") (citing cases). As the Supreme Court has explained:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*Riverside v. Rivera,* 477 U.S. 561, 575-78 (1986).

---

[3]  *See also Olian v. Board of Educ.,* 2010 WL 1197100, *3 (N.D.Ill. March 22, 2010) ("Defendant seeks a reduction because Olian prevailed on only one of her five ADA claims. Defendant argues that the five claims 'differed in scope' ... Again, the court disagrees. The argument that Olian's fee award should be reduced because she succeeded on only one of her several related claims is a request for the type of mechanical "claim-chopping" that *Hensley* expressly rejected").

10

The Seventh Circuit's decision in *Robinson v. City of Harvey,* 489 F.3d 864, 872 (7th Cir. 2007) is particularly instructive on this point. In *Robinson,* the plaintiff was shot in the buttocks by a police officer, who then accused him (falsely) of pointing a gun at him. At the civil trial, the jury agreed with Mr. Robinson that the use of force was unreasonable because he had not wielded a gun. *Id.* at 867.

The Robinson district court awarded roughly $500,000 in attorneys' fees even though the compensatory damages were only $25,000, far less than Mr. Robinson had requested, as well as $250,000 in punitive damages. *Robinson,* 489 F.3d at 872. The defense appealed the fee award, making the same sort of arguments the Defendants are making to this Court, arguments the Seventh Circuit rejected for reasons equally applicable here. *Robinson,* 489 F.3d at 872 ("The City argues that this minimal recovery did not constitute success warranting an award of the full lodestar amount, especially considering that Robinson asked for more. ... [T]he vindication of Robinson's constitutional rights cannot be valued solely in monetary terms. He effectively persuaded a jury that a significant number of City of Harvey officials conspired to plant a gun at the crime scene-a victory that serves the public interest by exposing to light disturbing police malfeasance and grave municipal institutional failures, and one that will presumably help to deter future constitutional violations by the City's officers. These achievements are anything but minimal."); *see also Ustrak v. Fairman,* 851 F.2d 983 (7th Cir. 1988) ("But the value of Ustrak's victory [$1,001] cannot be gauged by the modest size of the damages awarded. A judicial decision that finds a violation of constitutional rights and punishes the perpetrator with an award of punitive damages not only vindicates constitutional principles but is a deterrent to future violations, to the benefit not only of the plaintiff but of others in similar situations.") (emphasis added); *Hyde v. Small,* 123 F.3d 583, 585 (7th Cir. 1997) ("There is no minimum amount in

11

controversy required in civil rights cases and no federal small claims court, so it is no abuse of the federal district courts to bring the kind of suit that Hyde did, and therefore he should not be disqualified from an award of attorneys' fees without which such a case would never be brought.").

In sum, the substantial result Plaintiff obtained here was not only significant vindication of the violation of his constitutional rights, but also meaningful to the public in that the jury sent a message that Milwaukee police officers are not above the law and must instead follow it. Based on the law set forth above, Defendants' arguments should be rejected, and the full lodestar should be awarded.[4]

As a final note, it is certainly telling that Defendants themselves were only able to identify 29.3 hours out of a total number of hours counsel spent litigating the case as supposedly being limited exclusively to the strip search claims. *See* Def. Resp. at 14 (Table 2). Defendants' argument should be rejected, but even if it was accepted, the most it would justify is a cut of 29.3 hours, not a dramatic 62% cut. *Illinois Welfare Rights Organization v. Miller,* 723 F.2d 564, 567 (7th Cir. 1983) (court should look to overall results of litigation when plaintiff prevails on some claims but not other, related, claims).

---

[4] The City's invocation of taxpayers should be rejected. There is no "tax dollar" exception in the case law surrounding the lodestar; taxpayers are always affected by civil rights fee awards. *Cf. Moore ex rel. Estate of Grady v. Tujela,* 546 F. 3d 423, 429 (7th Cir. 2008) (arguments appealing to jurors' pecuniary interests as taxpayers are improper). In any event, a fee award here might well encourage Defendants' counsel to become better stewards of taxpayer resources. The City's "no settle for any price" stance here was terribly inefficient, and the City should not come to expect that courts will bend the law to bail it out where it gambles at trial and loses.

12

## II.    The Hours Sought By Plaintiff's Counsel Are Reasonable And Should Be Approved

The Defendants raise separate objections to hours billed by Attorney Shellow and those billed by Loevy & Loevy.  Attorney Shellow has filed a separate Reply memorandum to address the Defendants' specific objections to her time.  As for the objections to Loevy & Loevy hours, Plaintiff responds on several levels.

First, for the Court's convenience, Plaintiff has reproduced Defendants' Tables 3-4, adding an additional column containing Plaintiff's response addressing each of Defendants' specific objections.  These tables are attached hereto as Exhibits A & B.  For the reasons set forth therein, Defendants' individual objections should be overruled.

Second, as for the four general categories of Defendants' objections, Plaintiff responds as follows.

### A.    Defendants' "Block Billing" Objections Should Be Overruled

To be clear, there is nothing *per se* objectionable about block billing.  *Farfaras v. Citizens Bank and Trust of Chicago,* 433 F.3d 558, 569 (7th Cir. 2006) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice").  Moreover, block billing is particularly understandable and acceptable where the lawyers keeping the time records are on trial.  *Spina v. Forest Pres. Dist. of Cook County.,* 98-C-1393, 2002 WL 1770010 (N.D. Ill. July 31, 2002) ("Similarly, while block billing 15 hours a day typically might be deemed too vague and excessive to warrant payment, such entries are entirely appropriate when devoted to trial preparation just before and during trial.")

As explained in the response column in the attached Exhibits A & B, Loevy & Loevy attorneys did not inappropriately block bill, and to the extent Defendants claim certain entries required more explanation, that explanation has been provided.  And as set forth in Plaintiff's

13

Petition, other judges have had no problem approving similarly-billed Loevy & Loevy petitions in full. This Court should likewise reject Defendants' "block billing" objections. *See Garcia v. City of Chicago,* No. 01 C 8945, 2003 WL 22175620, *5 n.11 (N.D.Ill. Sept. 19, 2003) ("Contrary to the City's arguments, this court finds that L&L [Loevy & Loevy] sufficiently accounted for the time of each attorney. Although L&L used shorthand for many entries, they are clear enough to describe the tasks completed on the day in question and provide at least as much detail as the Ancel Glink time records").[5]

### B. Defendants' Misallocation Of Resources Objections Should Be Overruled

Defendants also claim that certain hours should have been delegated to non-attorney staff (Table 3). As set forth in Plaintiff's responsive columns (see Exhibits A & B) this objection has no merit. Loevy & Loevy attorneys did not bill for inappropriate non-attorney tasks such as "to open the case file, create a hard file, scan files and records, print, and file documents." *Cavada v. City of Chicago,* No. 13 CV 1916, 2014 WL 4124273, *2 (N.D. Ill. Aug. 18, 2014); *compare Montanez,* 755 F.3d at 555-56 (partner billed $450 for "scanning and faxing" and associate billed many hours "doing nothing but filing motions in limine"). *See also Vardon Golf Co., Inc. v. Karsten Mfg. Corp.,* 99 C 2785, 2003 WL 1720066, *4 (N.D. Ill. March 31, 2003) ("The Court will not involve itself in the kind of minute micro-managing of attorney's billing practices that Vardon's position would require. Beyond the principle of reasonableness, parties need not justify their billing practices nor their use of time and resources in litigation.").

---

[5] Additionally, because defense counsel did not disclose their own bills, there is no way to know if any of Defendants' attorneys (including recently-retained outside counsel who filed the Defendants' Response) were vulnerable to the same criticism. *Farfaras v. Citizens Bank and Trust of Chicago,* 433 F.3d 558, 569 (7th Cir. 2006) ("The rule's purpose is to avoid exactly the type of hypocritical objections presented by the defendants. Although the defendants object to the use of block billing and 'vague' descriptions by Farfaras's counsel, the defendants' counsel used similarly vague descriptions and block billing.").

14

### C.  Defendants' "Duplicative" Objections Should Be Overruled

Defendants should be precluded from challenging any of counsels' hours as "excessive" or "duplicative" on a particular task such as summary judgment, when they failed to disclose how many hours they spent on the case or certain tasks.  Indeed, the Court has no idea how many hours the Defendants have invested in this case or the same tasks they take issue with here.  *See, e.g., Garcia v. City of Chicago,* No. 01 C 8945, 2003 WL 22175620, *4 (N.D. Ill. Sept. 19, 2003) (hours plaintiff spent litigating the case was reasonable by comparison to greater hours spent by the defense).

By way of just one example, Defendants challenged Plaintiff sending two attorneys to Plaintiff's deposition when they also had two attorneys in attendance at Mr. Hardy's deposition. *See* Exhibit A (Response to Table 4) 2/4/2014 entry.

Moreover, contrary to Defendant's assumption, the fact that more than one attorney is involved in a given task hardly constitutes grounds to automatically invalidate some the time. *T.P. ex rel. Kimbrely R. v. City of Chicago,* 2011 WL 1197353, *9 (N.D.Ill. March 29, 2011) ("The billing records in this case reflect that Plaintiff's attorneys consulted with respect to significant events in the prosecution of this case, including preparation for pre-hearing conferences, the drafting of pre-hearing motions, and preparation for the due process hearing. As discussed above, consultation under these circumstances is reasonable"); *Dupuy v. McEwen,* 648 F.Supp.2d 1007, 1020 (N.D.Ill. 2009) ("[T]he court finds that although several attorneys devoted time to the same issue, it is generally clear that they were not duplicating work.  Often, one attorney was obviously the draftsman of a court filing, and the other the primary editor... The court thus finds the majority of Defendant's objections to duplicated effort unavailing."); *Mostly Memories, Inc. v. For Your Ease Only, Inc.,* 594 F.Supp.2d 931, 935 (N.D.Ill. 2009)

15

("Although Mostly Memories complains that certain billing entries involve discussions among the multiple attorneys working on the case, time spent discussing issues with other attorneys is a basic element of the practice of law and is compensable, if reasonable, in a fee petition.").

Another problem with Defendants' objections is that wherever Defendants attempt to label Plaintiff's time "duplicative," they then seek to exclude *all* of the time that any attorney billed. *See* Dckt. 228 at 17-18 (Table 4) (adding up all hours they deemed duplicative to exclude a total of 384.90 hours rather than excluding just one attorney's time). For example, Defendants seek to exclude *all of the time that every attorney* spent during the jury trial as "duplicative." *See id.* at 8/4/14 - 8/7/14 entries. Defendants presumably would have to acknowledge that at least some of Plaintiff's attorney time at trial was not "duplicative." By taking such an unreasonable and extreme position, Defendants foist upon the Court the burden of sorting it all out even were it inclined to sustain the objection, which, in any event, it should not. As stated, the Defendants have provided the Court with no context for assessing how many attorneys Defendants assigned to the same tasks challenged here. *Garcia,* No. 01 C 8945, 2003 WL 22175620 at *4.

Finally, Defendants' complaints about inefficiencies ring especially hollow when all of the hours in dispute could have been avoided. Defendants' counsel not only refused to recommend that the City accept Plaintiff's $10,000 settlement demand, but counsel also refused to make any counter-demand of any kind. Courts are rarely shy about penalizing Plaintiff's attorneys in fee litigation for failing to do substantially better than Defendants' settlement offers, and that same principle runs both ways. *See, e.g., Robinson v. City of Harvey,* No. 99 C 3696, 2008 WL 4534158, *7 (N.D. Ill. Oct. 7, 2008) (awarding lodestar in part because "Mr. Loevy was more than reasonable in his willingness to reduce his fee in an effort to resolve this case" whereas defendants' refusal to settle forced the plaintiff to provide strict proof of his claims);

16

*Heder v. City of Two Rivers,* 255 F.Supp.2d 947, 956 (E.D. Wis. 2003) (awarding full lodestar because plaintiff offered to settle on reasonable terms before the lawsuit was filed and again once the case had been litigated; court concluded: "the City has only itself to blame for the disproportionality between the attorneys' fees incurred and the amount Heder recovered. . . and [plaintiffs should not] be forced to swallow expenses incurred largely as result of the City's approach to this litigation").[6]

### D. Defendants' Objections To The Roughly 40 Hours Spent Preparing The Fee Petition Should Be Overruled

As they often do, Defendants point out that Plaintiff's counsel seems to have devoted a lot of time and careful attention to preparing his Fee Petition. It should hardly come as a surprise, however, that Plaintiff's counsel has a strong interest in putting his best foot forward in briefing this issue. Unlike Defendants' counsel who are paid, win or lose, at regular intervals throughout the case (by salary for the in-house attorneys, and for every hour billed by outside counsel), Plaintiff's counsel have yet to receive any compensation whatsoever for more than a year of litigation. It is thus no wonder that Plaintiff's counsel are interested in ensuring that the Court is provided with maximum assistance in assessing their position.

Under the law, "[t]ime expended preparing a fee petition is compensable to the extent that it is not disproportionate to the time spent on the merits of the case." *Pasternak v. Radek,* 07 C 2858, 2008 WL 2788551 (N.D. Ill. Apr. 3, 2008) (compensating counsel for 23 hours of time

---

[6] Nor should Defendants get any traction with their objections that time spent conferring and strategizing together is uncompensable. *See Fox ex rel. Fox v. Barnes,* 09 C 5453, 2013 WL 4401802, at *4 (N.D. Ill. Aug. 15, 2013) ("Next Barnes contends that Loevy's rate should be reduced because much of his billed time was spent [not actively participating and] conferring with the other attorneys about strategy. It is true that the court must be on guard against time spent inflating the bill with unnecessary tasks. The court knows Jon Loevy to be an experienced trial lawyer, however, and the advice and consultation of a seasoned trial lawyer can be invaluable in a complicated civil rights case such as this one.").

spent on fee petition when counsel spent approximately 199 hours litigating the case).  Here, with some 46 hours spent on a fee petition seeking compensation for more than 1,000 hours, Plaintiff seeks to recover substantially less hours as a percentage of time spent on the merits than in either *Pasternak* or the case relied upon by the Defendants, *Ustrak v. Fairman,* 851 F.2d 983 (7th Cir. 1988).

In fact, Defendants' citation to *Ustrak* supports, rather than undercuts, Plaintiff's position that 40-hours is a reasonable amount of time for working on a fee petition.  In that case, the Seventh Circuit reduced by 2/3 the District Court's decision compensating attorneys and law students for 140.45 hours spent on a fee petition.  *Ustrak,* 851 F.2d 983, 987-88.  The net result was that the Seventh Circuit approved 46.35 hours for the Fee Petition, which is even more than Plaintiff seeks here.  And the basis for the reduction was at least in part the fact that, "[f]or every hour spent litigating the merits the plaintiff's attorneys devoted almost 15 minutes to preparing a petition requesting fees for that hour."  *Id.*  In the case at bar, by contrast, the 46 hours is a tiny fraction of the time spent on the merits.  It should be approved.[7]

III.        **Defendants' Few Objections To Plaintiff's Hourly Rates Should Be Overruled, And Plaintiff's Rates Should Be Approved**

As stated, Attorney Shellow has filed her own Reply to Defendants' arguments about her hourly rate.  Loevy & Loevy's rates are discussed as follows.

In barely a page of argument, Defendants have ignored all the declarations and case law Plaintiff submitted on pages 9-23 of Plaintiff's Petition, which is precisely the kind of evidence the Seventh Circuit has instructed attorneys to submit in support of fee petitions.  *Spegon v.*

---

[7] As was true with the underlying case, these 46 hours could have been avoided had the City been willing to negotiate attorneys' fees in good faith.  In Plaintiff's counsel's experience, many, if not most, fee petitions are resolved by compromise.  There is no room for a negotiated resolution, however, where the City's view is that Plaintiff is entitled to nothing or a tiny fraction of their fees.

18

*Catholic Bishop of Chicago,* 175 F.3d 544, 556 (7th Cir. 1999). Under the case law, Defendants

have failed to meet their burden to show a "good reason why a lower rate is essential." *People*

*Who Care v. Rockford Bd. of Ed.,* 90 F.3d 1307, 1313 (7th Cir. 1996).

In particular, Plaintiff's counsel refers the Court to his opening Petition, Dckt. 219 at

8-12, and the evidence discussed therein, including:

- Jeff Scott Olson's declaration, a Madison, Wisconsin civil rights attorney who practices in the E.D. Wis. - Dckt. 219, Exhibit F (stating that he charges an hourly rate of $550 per hour as a 1976 graduate);

- Jonathan Safran's affidavit, a Milwaukee civil rights - Dckt. 219, Exhibit D (last hourly rate sought in the E.D. Wis. was $325);

- Loevy & Loevy attorneys' declarations stating their qualifications and rates they have been awarded by other courts, Dckt. 219, Exhibits J-O;

- the affidavit of Bruce Meckler, Dkct. 219, Exhibit F (expert fee report supporting the Loevy & Loevy attorneys' hourly rates);

- the case law supporting the Laffey Matrix as an appropriate measure of hourly rates;

- the case law awarding hourly rates for these attorneys cited in the opening brief. *See, e.g.,* Dckt. 219 at 16-21 (citing prior awards as basis for hourly rates); and

- the actual hourly rates that courts have awarded these particular attorneys or other Loevy & Loevy colleagues on similar cases.

Defendants make very few substantive responses. One is to suggest (incorrectly) that

Plaintiff has supposedly "submitted no evidence showing that their hourly rates comport with

prevailing market rates in Milwaukee." Def. Resp. at 20. There are several problems with that

argument. First, there is Seventh Circuit authority that attorneys should be compensated for their

established hourly rate even when practicing in other jurisdictions. *Mathur v. Bd. of Trustees of*

*S. Illinois Univ.,* 317 F.3d 738, 744 (7th Cir. 2003); *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760,

768 (7th Cir. 1982). Regardless, it would not matter either way because, based on the evidence

and cases cited in Plaintiff's Petition, there is no material difference (and Defendants have certainly failed to demonstrate any) between the billing rates in Milwaukee and Chicago anyway.

Specifically, Defendants have ignored not only the Safran and Olson Declarations cited above, but also the Wisconsin case law Plaintiff cited in this Petition that further supports the rates sought as reasonable for this particular market. *E.g., Sierra Club v. Jackson,* No. 11-cv-315-wmc, 2013 WL 5409036, *4 (W.D. Wis. Sept. 25, 2013) (blended rate of $415 found reasonable for two Madison attorneys with thirteen and nine years' experience for their "collective efforts on a contingent fee matter" in environmental case); *Alexander v. City of Milwaukee,* No. 03-C-611, 2006 WL 277114, at *6 (E.D. Wis. Feb. 3, 2006) (awarding hourly rate of $250 for attorney with fifteen years' experience in an employment discrimination case almost a decade ago).

The only other argument or evidence upon which Defendants rely is their own outside counsels' affidavits attesting that their own rates are far lower than that sought by Plaintiff's counsel. This, however, is not a useful comparison. Defense attorneys are paid whether they win or lose, and their billing rates thus tend to be lower than plaintiff's counsels' rates to reflect the absence of any risk premium. One court explained additional reasons as follows:

> [H]ourly rates of the defense counsel are usually lower than those charged by the plaintiffs' counsel for noncontingent cases for various practical reasons, including the fact that the defense counsel normally represent clients with whom they have an ongoing relationship and, therefore, can adjust rates downward in expectation of payment for future work encompassing certain levels of time expenditures, in contrast to the plaintiffs' counsel, who usually will represent a client on a one-time basis. Even when defense clients retain counsel on a one-time litigation basis, the defense counsel are in a much better position than the plaintiffs' counsel to anticipate the level of time expenditure that will be required for the case, a factor with significant economic consequences.

20

*Clarke v. Ford Motor Co.,* 01-C-0961, 2006 WL 752902 (E.D. Wis. Mar. 21, 2006) (citation and quotation omitted). *See also Hasham v. California State Bd. of Equalization,* 96 C 3326, 1999 WL 59850 (N.D. Ill. Feb. 1, 1999) ("It is recognized that hourly rates for defense counsel, who do not work on a contingency basis and whose clients may have more bargaining power, are sometimes lower than those for plaintiff counsel.").

With Defendants' counsels' own affidavits being of little utility, there is really nothing left of their argument. Having failed to rebut the extensive evidence supporting Plaintiff's hourly rates, Defendants' objections should be overruled, and Plaintiff's counsels' rates approved.

### Conclusion

Plaintiff's counsel undertook an extremely risky case, and litigated very hard and well, achieving an outstanding result for Mr. Hardy at trial. Under the circumstances, the law supports Plaintiff's counsels' lodestar request, and Plaintiff's counsel respectfully request that the Court approve their Petition for fees and costs in full.

Respectfully Submitted,

/s/ Heather Lewis Donnell

Russell Ainsworth
Heather Lewis Donnell
Theresa Kleinhaus
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
(312) 243-5900

Robin Shellow
THE SHELLOW GROUP
324 West Vine Street
Milwaukee, Wisconsin 53212
(414) 263-4488

21

## CERTIFICATE OF SERVICE

I, Heather Lewis Donnell, an attorney, certify that on October 3, 2014, I filed a copy of Plaintiff's Reply in Support of His Petition for Attorneys' Fees and Costs the Court's CM/ECF electronic filing system and thereby caused a copy of the same to be served on all counsel of record.

/s/ Heather Lewis Donnell

22